Next case is also WSOU Investments v. Google, 2022-1064. Mr. Coyde, is it? Coyde. Thank you. Good morning, may it please the court. I'll take your honors instruction to not try to be repetitive here but also keeping in mind that you know there should be a case-by-case analysis of each one. Let me just kind of synthesize the issues. This is addressed in our brief focused on kind of the judge's reliance on DIFAN 1 and how that caused a lot of issues here. In DIFAN 1, which issued just four months before the Markman hearing, it included footnote 4, which is reproduced on page 11 of our reply brief. It stated, were the court to consider a mobile device to be sufficient structure for code, then the applicant could simply recite two nonce words, processor and code, together in a claim to essentially write the claim in a means-plus-function format without being subject to 112.6. So two things to note here, I think, your honor, because it's telling on what the judge's reasoning was. First, the district judge presupposes, without citing any authority of this court, that processors are nonce words, which is something just kind of as a conclusory assumption. And second, the way this footnote is worded, it says kind of like, well, you can't just add these two when he considers nonce words, or else it won't be subject to 112.6. So this footnote reveals the judge's mindset that the default is 112.6. He kind of assumes 112.6 is going to apply. Google cited that and relied on DIFAN 1 on its reasoning. I heard opposing counsels state that they're trying to distinguish DIFAN 2, this court's, what I'm calling this court's, DIFAN decision. But they embraced it below, and we put that in our briefs. So what was the impact of doing that? They cited it. The judge, just as he did, first he inverted the presumption. Not only did he fail to apply it, which was an issue in VDPP, he inverted it. He said, he called the, he kind of treated the terms as possibly means plus function. He treated them as something that, you know, here's Google's, I mean, Wildstyle's argument, why it doesn't apply. He kind of twisted the presumption. Second, he failed to apply a case-by-case analysis and applied a categorical rule that crossed. Can I ask you a question? Yes. One of the struggles I'm having with this case is that if I look, you know, there's certain things under our framework that we look to, to see whether a particular language that isn't using the word means, but something that could be construed as means, to determine whether it's a nonse word or whether it connotes structure, is to look at the specification. And in this case, for example, on a collaborative application management processor configured to do certain things in the claim, when I look to the specification to see what it says about that, it says, it uses a different word. It says collaborative application management means. That's what it uses throughout the specification to say what this processor is. It's a means. And, you know, it's kind of backwards from 1.12.6, but it's a little, that's one of the things that I think weighed into the distrovert's mind when the distrovert reached the conclusion it did. And I have to say it's weighing on mine too. So how specifically do you respond to the point that when your specification is referring to this thing, this limitation in your claim, that it's referring to it as a means, which, you know, doesn't connote structure? Well sure, but the specification can be, of course, as you stated, obvious, but it could be broader than the claim scope. The claim was then amended to recite processor. But what is a processor in the context of this case where the only thing we see that the patent teaches that it could be is a means? Well, okay. I would approach it this way because if the word means was used and it became a means in the claim, then I would agree that we would have the presumption of 1.12.6 under the case law. Here, processor was used. So there's a presumption against 1.12.6 applying. Under cases like APEX, Google came forward with no evidence that processor in this context... Can I ask you this? Sure. Isn't the specification some evidence? I mean, they came forward with your specification. But that doesn't...the specification just says what...if anything, it's saying, okay, well, there's a word means in the process. It doesn't say this is a positive understanding of the difference between means and processor. If they had come forward, which they didn't, and said, okay, in this context, with a declaration of opposita saying, okay, in this context, looking at it, processor, when I read the patent, does not mean something that is a nonce word or something does not connote structure. But they didn't do that. We just have...we got here today because district judge just equated processor categorically as a nonce word across all these cases and just kind of ran roughshod over that. He didn't consider in the context of... I understand your view. I mean, I would just say for purposes of this argument, because it's a de novo question that we can just really focus on instead, focus on the merits of each particular case and why, in this case, processor, in your view, is structural and what do you...what is your view, I guess, is that just because the specification says means that still a person of ordinary skill in the art would connote structure with processor. What evidence do you have of that? Again, we don't have any...we don't have any evidence in the form of a they were under cases like Apex required to come forward with evidence that a POSA would consider processor in this case to not connote structure. They didn't do that. So that is...it seems to me right there, you know... What if I were to say the use of the word means in the specification might inform whether a POSA would think processor and means mean the same thing? I think the district court said that the specification equates processor with that. So what is your response then? I'm just trying to get a response without worrying...the burden, that burden of proof you're talking about, or the burden, we've said in a couple cases it's not that strong. So moving away from that, what other argument do you have? Well, we also have, again, understanding that cases are case by case, BDPP stands for the...stands for indication that processor is to connote structure. In that case. It wasn't stated...the quote wasn't stated, like, you know, specifically, but of course it was case by case. And then there are no other cases that Google has cited of this court ever finding processor to not connote structure. So that would be our argument. It's more of a legal argument. In this case, and I'd like to just continue to focus on the last limitation, this collaborative application management processor configured to manage collaborative applications. So, because it doesn't have the word means, it is presumptively structure. So we start with that. It's structure. And then we look to, since there's no extrinsic evidence, we look to the information to inform one of skill in the art that this defines a specific, specifically definite structure. And I have no idea what this means. And even if I look to the specification, I'm having trouble finding anything to suggest to one of ordinary skill in the art that is this recites a sufficiently definite structure. I have no idea what managing collaborative applications means. This limitation is, you know, moving away somewhat from just the word processor, looking at the limitation in its full form. Don't you have a problem there? It's the fact that the specification comes up short in informing one of skill in the art that this recites a sufficiently definite structure. Well, I do believe the specifications we addressed in our blue brief does discuss the details of what the collaborative application management processor entails. Well, take me to it. Sure. I mean, there's some discussion about databases, 107, 108, 109, things like that. But I don't see anything that talks about a processor that talks about what managing collaborative applications means. Help me out. Well, there is no, to be clear, and I think we said this at the end of the summary, there is no discussion of processor, the word processor in the specification. So we would concede that. But if we pointed to pages 32 to 33 for collaborative application management, that kind of described that. I don't want to, you know, kind of read it all just This is page 32 of what? Our blue brief, your honor. Don't you want to point us to the patent itself? Okay, there's also, well that does, it's 585, it's pointing to columns 321 to 31. You see that side at the end of the block quote, your honor? Yeah, that was the section I was referring to. Yeah, yeah. And then we also talk in, recite to... That doesn't give me a whole lot of help. Well, it's certainly referring to databases which are structural. I mean, what's a collaborative application and how does one manage it? It's, again, we highlighted the words, enabling recording of data, enabling storage of data for RSS flows, enabling, among other things, storage of task information. There's a fulsome discussion of it there, your honor. You just made a very serious concession, which is that the word processor, which is in the claim, doesn't appear in the patent. I think we, yeah, I think that is, that is accurate. And that, we've said that in our, we acknowledge that in our briefs. But the other thing to get to, your honor, just to briefly, I'm not even going into my rebuttal time, but also, you know, we did take a position here on what the structure is below. What did you say it was? For, like, collaborative, if you look at APBX 660, which is our. Sorry, could you say that again? Sorry. APX 660. 660, which summarizes the parties' positions. We have our structure laid out in a table form. The court lays it out. And, again, they didn't come forward with any evidence of an expert saying of what the corresponding structure should be. So, you know, they don't have the view of a posita, and that needs to be proven by clear and convincing evidence. That's not shown. So, with that, I'll kind of rest here, save the rest of my time, and full rebuttal. Can I ask you something? I'm sorry. Sure, your honor, of course. I find it interesting that in this specification, you are saying that the processor is databases. Is that what you're saying when you turn to column three and you tell us to look at this thing that refers to databases, that that's your view? Because I don't usually think of a processor as being databases. No, I'm sorry, your honor. I didn't hear what you said. You said I said the processor was. Is it your view that a processor comprises databases or is databases? Is that your view when you turn to column three and you're referring to the patent and where it says it refers to a number of different databases? That's what you turned us to when we were looking at what is the structure for your. Well, it includes the communication with those databases, yes, your honor. Does it include databases? Let me see what you said. Hang on a second. That's sort of a basic technical question. Does the databases, does the processor include databases? Yes. I was asking you, is that what you said? It sounded like that's what you said. Well, we did take the position below that the structure with the database is 107, 108, 109, various databases. So in your view, in this case, in the context of this patent, a processor is databases. That's the structure. Yeah, that's what I mean. We're talking about the structure, whether processor is a word that connotes structures. It's a big issue in this case. Right, I understand, your honor. The databases and also the software to kind of communicate with those databases. It doesn't say that in your proposed construction here on page A660. That's true, your honor. Okay. We will give you two and a half minutes of rebuttal time. Thank you, your honor. Welcome back, Mr. Mayer, please. I'm back, your honors. I will try to be as efficient as possible. Here, your honors, the district court grounded its analysis for all three terms in both the claim language and the specification. And in doing so, the district court found that in the context of the 585 patent, the specification, the interchangeable use of the terms means, agent, and module in the specification with the term processor in the claims weighed in favor of applying Section 112.6. And that is fully supported by the record. Now, Mr. Coyte made an argument that the district court here somehow shifted the burden. And I want to address that because I think that is plainly incorrect. Here, the court repeatedly noted that the presumption against Section 112.6 exists when there's an absence of the word means. The court expressly noted that the presumption here applies. The court repeatedly identified the controlling legal standard for overcoming the presumption. And contrary to Plaintiff's argument, the court did not apply categorical rule. In fact, the court said there is no categorical rule and evaluated the substance of each patent and each term, specifically context dependent on the specification. With that, I would just like to focus briefly on the collaborative application management processor. As Your Honors pointed out, the district court here noted that WSOU's own citations to the intrinsic record indicate that the only discussion of collaborative application management in a specification refers to a collaborative application management means. The term processor standing alone or modified by any functional adverbs does not appear anywhere in the specification. The district court further found that the claimed function here, which is collaboratively managing an application, was self-referential. It just simply repeated the functional adverbs and bolstered the conclusion that the term is subject to 112.6, and the court determined there was no corresponding structure for any of these three terms. What's your view on whether the fact that the specification refers to this as a means and the claim refers to it as a processor, does that support the argument that the patentee was making a distinction and deliberately avoided 112, or does it support the view that the patentee used those two words equivalently? In my view, consistent with the district court's, I believe the patentee used the terms equivalently, and we know that because all the functional modifiers are virtually identical in the specification and the claim language. Now, the patentee may have sought to avoid means plus function by replacing means or module with the term processor in the claim language, but that simply creates the presumption against 112.6. It does not eliminate the applicability of 112.6. It sets the context and the framework. Here, frankly, given the juxtaposition between the specification and the claim language, again, this is very similar to what this court addressed in Williamson and in Genera, which is it seems like an attempt to engage in purely functional claiming while avoiding the scope and requirements of section 112.6. If there's no further questions, Your Honor, I will give the court back its time. No penalties, giving back time. Thank you. Thank you, Your Honor. Mr. Coide has some rebuttal time. Thank you, Your Honor. I guess to address, the one major I should want to address is your question, Judge Lynn, whether the terms were used interchangeably or whether it was a, I heard counsel say, at least acknowledge, that it might have been the possibility that the applicant intended to avoid 112.6 by doing it. And that, I would agree. It was done through an amendment. It wasn't something that came in the original claims. So there is certainly an amendment. And this case was not cited in this case, but in the 1066-67 case. Nature Simulation talked about giving way to, I'm sorry, not Nature Simulation, but there's cases in that case where we cited about the applicant's choice. So being given some weight. And so I think that should be accorded something here. There would be no reason to just do it out of the blue. If the applicant intended to stay with means, they would have left it that way. We would be in a different world. We would be down a 112.6 path. Even if that is the proper interpretation, I guess your adversary would say, well, the amendment just didn't go far enough just to substitute the word processor. Well, I mean, you asked in another line of questioning of what else more could they have done. And I don't know what else more they, if I was a prosecutor, what else more could you have done than to signal to say, okay, I'm going to include something that I think is structural intentionally to signal to the whole world that I'm moving it over to the structural world. So, again, to answer your, that's, I think, one of the core issues, is that the amendment actually demonstrates that it wasn't an interchangeability, that there was a decision to take it over to the structural side. With that, I'll just, we just ask for the court to reverse. Thank you very much. Thank you. And that case is submitted as well.